## Third Department, November, 1944.

### (November 15, 1944.)

In the Matter of the Estate of Marjorie McCleary, Deceased.
Mary J. Hansen, as Executrix of Marjorie McCleary, Deceased, Respondent; Marjorie E. Davis, Appellant.

MEMORANDUM BY THE COURT. Appellant and respondent, sisters, are in disagreement involving the distribution of a small estate which their mother left. After the probate of the mother's will in which respondent is named as executrix she instituted a discovery proceeding in the Surrogate's Court. The appellant was examined as a witness and at the conclusion of the hearings the Surrogate found that appellant had in her possession $2,411.76 belonging to her mother's estate which he directed her to pay over. Appellant then applied to the Surrogate to vacate the decree on various grounds, none of which had merit. The application was denied and from that order appellant has come to this court. The proof is clear and convincing that appellant has in her possession the amount of money belonging to the estate which she was directed to refund.

Order appealed from affirmed, with twenty-five dollars costs and disbursements to respondent.

HILL, P. J. (dissenting). Appeal from an order of the Montgomery Surrogate's Court denying an application made under subdivision 6 of section 20 of the Surrogate's Court Act to open a default. The intestate was the mother of the petitioner in a discovery proceeding, and of the appellant. It appears that she had resided with petitioner for several years and had made a will in October, 1942, bequeathing to her the major part of her estate. In June, 1943, she left the home of petitioner and thereafter lived with appellant or in her family until her death in January, 1944, except when she was in a hospital or nursing home. During this period she checked over to appellant her savings bank deposit. Substantial sums were drawn by appellant to pay legitimate expenses and finally for the funeral, doctor and hospital bills. Appellant received $3,431.26 and there remained $2,411.76 after expenditures made on behalf of testatrix. This is directed to be paid to the petitioner as executrix. The estate, outside of the bank deposit, does not exceed six or seven hundred dollars.

The order in the discovery proceeding is founded entirely, except as to formal matters, upon claimed admissions of the appellant. She seeks an opportunity to litigate the ownership of the fund. Much of the written and oral argument on this appeal involves the so-called equities between the parties as to which is most entitled to receive the estate because of kindness and favors. There is no doubt that at one period petitioner was the favorite, but a donor has the right to change and to favor one not formerly held in high esteem. A testator having capacity, may change his will and even do an unfair thing as between children.

Appellant contends that she did not understand the nature of this proceeding; that the petition was not served upon her, and that she supposed there would be opportunity later to litigate the matter on the merits. She believed that the matter could be decided only after she had been "sued" and that step, as she understood it, had not been taken. It is asserted that attorneys for opposing parties advised her that she needed a lawyer, and that she said she did not; that her husband was, or had been, a justice of the peace, and that would be sufficient for the matter as it then stood. On this motion she presented the affidavits of eight witnesses, two or more apparently disinterested, and all say that the testatrix expressed to them her desire that anything that remained from the savings bank deposit, after expenses, should be the property of appellant, and that the testatrix had given the bank deposit to appellant. This, together with the delivery of the fund, would give appellant a title, thus she has an issue to present to a court. Two attorneys who represented petitioner on the probate of the will and her present counsel each made an affidavit that they told appel-

lant she would need an attorney. Passing over the questionable practice of attorneys becoming witnesses in litigated matters in which they are counsel, it can be understood that the appellant would not give great weight to the advice of these men who had been retained by petitioner, with whom she disagreed. Appellant, in her application to open the default, states her understanding of the conversation with these counsel, and it is at variance with their recollection. The order to show cause served upon appellant directed that she attend and be examined " according to the prayer of the said petition ". The petition, which she never saw, does not give notice that ownership of the fund was to be determined. From the record the hearings seem to have been informal, the only appearance was by the petitioner-executrix. The Surrogate made no ruling or statement which would warn appellant of a final determination of ownership. From the order served upon her and from the entire records, except the attorneys' affidavits, the Surrogate was conducting an "inquiry".

In *Matter of Behncke* (253 App. Div. 835) an order of the Kings County Surrogate denying a motion to open a default was reversed. There the contestants and appellants were attempting to proceed without the aid of an attorney, and their manner and methods were stated to be crude and somewhat exasperating. The court states: "However, there seem to be possible merits to the contest, and they are entitled to their day in court. [Citations.] If they are in good faith in the prosecution of the contest, and their acts, though lacking in skill and courtesy, are not characterized by deliberate willfulness, with purposes of obstruction and delay, they may now have an opportunity to proceed with diligence ". A general rule often stated is that courts are liberal in opening defaults to the end that a trial may be had of the merits. The determination usually involves only the question of terms to be imposed in granting the order. (*Iger* v. *Boyd-Scott Co., Inc.*, 248 App. Div. 902; *Long Island Trading Corp.* v. *Tuthill*, 243 App. Div. 617; *Veit* v. *Smith*, 241 App. Div. 687; *Lannon* v. *Carroll Towing Co., Inc.*, 235 App. Div. 690.) These cases all cite *Allen* v. *Fink* (211 App. Div. 411) and *Baldwin* v. *Yellow Taxicab Corporation* (221 App. Div. 717). The latter is an authority in our own department.

The order should be reversed on the law and facts; the appellant should pay the disbursements but no costs of this appeal, and twenty-five dollars, and the matter should be remitted to the Montgomery County Surrogate's Court for trial.

Heffernan, Brewster and Foster, JJ., concur in decision; Hill, P. J., dissents in an opinion in which Bliss, J., concurs.

Order appealed from affirmed, with twenty-five dollars costs and disbursements to respondent.